**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**GREGORY EVERETT,**

**Petitioner,**

**v.** **Case No. 8:13-cv-2386-T-27AEP**

**SECRETARY, DEPARTMENT OF CORRECTIONS,**

**Respondent.**
______________________________/

## ORDER

Petitioner Gregory Everett, a state of Florida inmate proceeding *pro se*, filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 8). He challenges his conviction entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida, in 2002. Respondent filed a response (Dkt. 11), in which it concedes the timeliness of the petition. Petitioner filed a reply (Dkt. 18) and notice of supplemental authority (Dkt. 23). Upon review, the petition must be denied.

## PROCEDURAL HISTORY

Petitioner was convicted of one count of lewd or lascivious molestation. (Dkt. 14, Ex. 3.) He was sentenced to life in prison as a habitual felony offender. (Dkt. 14, Ex. 4, p. 254.) The sentence included a 30-year term as a prison releasee reoffender. (Id.) On direct appeal, the state appellate court affirmed with a written opinion. *Everett v. State*, 872 So.2d 341 (Fla. 2d DCA 2004). (Dkt. 14, Ex. 7.)

Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which the state court denied. (Dkt. 14, Exs. 8, 9, 10.) The state court also denied Petitioner's motion to amend his postconviction motion. (Dkt. 14, Exs. 11, 12.) The state appellate court reversed in part for further proceedings on ground two, but affirmed the denial of relief on all other grounds. *Everett v. State*, 59 So.3d 358 (Fla. 2d DCA 2011). Upon remand, Petitioner filed another supplement to his motion. (Dkt. 14, Ex. 15.) After conducting an evidentiary hearing on ground two, the state court denied relief. (Dkt. 14, Ex. 18.) The state appellate court affirmed the rejection of this claim. *Everett v. State*, 121 So.3d 554 (Fla. 2d DCA 2013) (Table).

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential

standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas

'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . .") (citations omitted).

In a *per curiam* decision without a written opinion, the state appellate court affirmed the rejection of postconviction relief after remand on the claim raised in Ground One of the federal habeas petition. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Review of the state court decision is limited to the record that was before the state court. *Pinholster,* 563 U.S. at 180-81.

Petitioner bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**EXHAUSTION OF STATE COURT REMEDIES; PROCEDURAL DEFAULT**

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner

must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 167-70 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of

someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## DISCUSSION

**Ground One**: "The State court violated Petitioner's Sixth Amendment right of the United States Constitution in respect to a fair trial with impartial jurors, where extrinsic contact occurred between prosecuting attorney and certain members of the jury after trial commenced."

Petitioner argues that his Sixth Amendment right to a fair trial was violated when the prosecutor spoke with several jurors outside of the courtroom during the trial. He claims that, because of this incident, his jury was not impartial. The court addressed the matter during the pendency of the trial, and counsel moved for a mistrial, but these proceedings were not recorded or transcribed. When Petitioner initially brought this claim in his postconviction motion, the state court granted an evidentiary hearing. However, it *sua sponte* denied the claim prior to the hearing, determining that the claim was one of trial court error that should have been raised on direct appeal. (Dkt. 14, Ex. 10.) The state appellate court reversed and remanded for further proceedings:

> Attached to Everett's motion was his trial counsel's affidavit, which supported the contention that the attorney had alerted the trial judge about the potentially improper conversation between one or more jurors and the victim but that portion of the proceedings was not recorded. . . . However, before the [evidentiary] hearing was held, a successor judge *sua sponte* denied the motion on the merits, finding that Everett was not entitled to an evidentiary hearing because claims of trial court error must be raised on appeal rather than in a rule 3.850 motion.
>
> Nothing attached to the order on appeal demonstrates that the issue Everett raised in his postconviction motion could have been raised on direct appeal. Indeed, the allegations appear to be that the trial judge and trial counsel failed to have the court reporting system in place or operating when the matter was addressed to the judge. If that is the case, given that trial counsel was not the appellate counsel, there would have been little or no ability for appellate counsel to even appreciate that the

> issue existed.
>
> We conclude that this motion could not be summarily denied on the grounds relied upon by the postconviction court.

*Everett*, 59 So.3d at 358-59 (footnote omitted).

Petitioner then filed a supplement in further support of his claim, and the state court conducted an evidentiary hearing. At the hearing, Petitioner's mother, identified in the record as Mrs. Everette,[1] testified that she came out of the courtroom and observed members of the jury talking with the prosecutor and the victim. (Dkt. 14, Ex. 17, p. 102.) She saw them "gathered around each other like in a huddle" and saw them speaking to each other, although she did not hear what was said. (Id., pp. 102, 104.) The hallway they were in was not full or crowded, she stated. (Id., p. 104.) Mrs. Everette testified that after she informed counsel of this, the attorneys "went up to the podium of the judge and they discussed something, but they never did say what it was." (Id., p. 103.) She testified that the judge did not make any inquiry of the jurors. (Id.)

Petitioner testified that he was entering the courtroom when he observed the prosecutor, the victim's mother, and jury members "right in the corridor like in a meeting." (Id., p. 106.) He recalled that either the victim's mother or the prosecutor was saying that Petitioner had already been in trouble for this once. (Id., p. 108.) He testified that after he told counsel, counsel approached the bench, but that he did not know what was said. (Id., p. 107.) Petitioner testified that counsel wanted to declare a mistrial but that the court said there would not be a mistrial. (Id.) Petitioner testified that the court did not question the jurors. (Id., p. 109.)

Trial counsel Howard Anderson testified that during a break from testimony, Petitioner informed him that the victim's mother and the prosecutor were talking and it appeared they were

[1] This name appears in the state court record as both Everett and Everette.

very close to two of the jurors. (Id., pp. 113-14.) Anderson observed the prosecutor talking to the victim's mother about five feet away from two jurors who were engaged in a conversation with each other. (Id., pp. 114-15.) However, he did not see the prosecutor talking to any jurors. (Id., p. 115.) Anderson's concern was that the jurors might overhear the conversation between the prosecutor and the victim's mother. (Id., p. 115.) He asked the courtroom deputy to observe the situation. (Id., p. 114.) Anderson stated that the hallway was loud and there were "tons" of people. (Id., p. 114.)

Anderson testified that the courtroom deputy brought the matter to the attention of the trial judge, who immediately called Anderson and the prosecutor, Jennifer Parker, into the courtroom:

> A [ ] [The trial judge] was very concerned. He called Miss Parker in. He called the victim's mother in. And it happened very quickly. I mean just snap of the finger, everybody was back in the courtroom. My bailiff has alerted me to possible impropriety. I want to take immediate [sic], make sure that nothing's happened. Asked Miss Parker some questions. Miss Parker said that I was discussing with my victim's mother how the case was going. I wasn't talking to the jurors. I don't believe they overheard me. I believe he took a brief statement from the victim's mother that they weren't talking to the jurors. And if I remember correctly, he asked the two jurors to come in and said did you overhear anything that was transpiring between Miss Parker? And they were like, no; we weren't even paying attention to her.
>
> Q Okay, so the judge actually inquired and asked if they overheard anything?
>
> A Yes.
>
> Q And they said no, they did not?
>
> A No, they did not.

(Id., p. 116.) Anderson reiterated that the trial judge "[q]uickly inquired from them, did you hear anything or was there anyone talking to you, anything? No, Your Honor, we didn't hear anything." (Id., p. 117.)

Anderson explained that, "I still had concern. I still thought, and for protection purposes of Mr. Everette, I needed to ask for a mistrial, because I don't know. The jurors could say something. Could they have still possibly been contaminated? Could they have possibly overheard something? As a precautionary measure, I asked Judge Tharpe for a mistrial." (Id., p. 117.) Anderson testified that the court denied this request, and found that nothing improper had transpired. (Id., pp. 117, 122.)

Anderson further explained that he believed that everyone involved assumed the court reporter was present, but she was not. "We all thought she was in there. Because it just happened so quickly and Judge Tharpe was like get everybody in here before any - - before anybody moves, anybody goes off or the jurors move, I want everybody back in here and I want to find out what happened." (Id., p. 118.) It was not until Anderson spoke to Petitioner's appellate attorney that he realized there was no record of these events. (Id., p. 118.)

In its order denying relief, the state court summarized the testimony and found:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the March 28, 2012 evidentiary hearing, the court file, and the record, the Court finds Mr. Anderson's testimony to be more credible than that of Defendant and Mrs. Everette. Therefore, the Court finds in his motion, "Everett alleged under oath that he was deprived of due process when the trial judge failed to dismiss the jury for misconduct after the prosecutor, the victim, and the victim's mother 'held a conference' with jurors in a courthouse corridor during a recess." *Everett*, 59 So.3d at 358. "Everett further claim[ed] that his trial attorney brought this matter to the judge's attention in open court but that the judge failed to inquire about the substance of the hallway discussion." *Id.*
>
> However, the Court finds the prosecutor, the victim, and the victim's mother did not hold a conference with jurors in a courthouse corridor during a recess. The Court finds although there is no transcript of the proceedings because the court reporter was not in the courtroom at the time, Judge Tharpe did inquire about the substance of the hallway discussion. Specifically, the Court finds Judge Tharpe inquired of the victim's mother who assured him that she and Miss Parker were not talking to the two jurors. The Court further finds Judge Tharpe inquired of both

> jurors and they assured the Court they did not overhear any conversation between Miss Parker and the victim's mother, nor were they engaged in a conversation with them. Therefore, the Court finds Defendant has failed to demonstrate any juror misconduct, thereby failing to demonstrate any basis for dismissal of the jury. Lastly, the Court finds Defendant has failed to demonstrate that the jury in his case was not impartial. **As such, no relief is warranted.**

(Dkt. 14, Ex. 18, p. 142) (emphasis in original).

Petitioner does not show entitlement to relief. The Sixth Amendment guarantees the accused a "trial, by an impartial jury . . ." in federal criminal prosecutions. U.S. Const. amend. VI. Because "trial by jury in criminal cases is fundamental to the American scheme of justice," the Due Process Clause of the Fourteenth Amendment guarantees the same right to the accused in state criminal prosecutions. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). To be impartial, a juror must base his or her decision on the evidence presented in the case. *See Irvin v. Dowd*, 366 U.S. 717, 723 (1961). In *Remmer v. United States*, 347 U.S. 227, 229 (1954) the Supreme Court held:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

Petitioner does not demonstrate that his right to a fair trial was violated due to any improper contact with the jury. The postconviction court made specific factual findings that the trial court inquired about the alleged contact, that no conference between the jurors, Parker, the victim, and the victim's mother occurred, and that the jurors told the court they did not overhear the conversation between Parker and the victim's mother. Petitioner does not overcome the presumption of correctness afforded to these factual findings. 28 U.S.C. § 2254(e). Additionally, these findings are based on the testimony of trial counsel Anderson, whose testimony the court found more credible than that

of Petitioner and Mrs. Everette. This credibility determination is also presumed correct. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's]."); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."). Petitioner does not overcome the presumption of correctness afforded to this factual finding.

Accordingly, there is support in the record for the state court's finding that Petitioner failed to demonstrate the jury was not impartial due to hearing or participating in a conversation involving Parker and the victim's mother. Petitioner cites *Turner v. Louisiana*, 379 U.S. 466 (1965), for his argument that "it is forbidden to permit a prosecution witness to have any association with jurors outside the courtroom." (Dkt. 18, p. 6.) *Turner* provides that the jury's "verdict must be based upon the evidence developed at the trial." 379 U.S. at 472.

*Turner* is factually distinguishable from Petitioner's case. In *Turner*, two deputy sheriffs who were in "close and continual association with the jurors" were also prosecution witnesses. *Id.* at 468. This circumstance involved "extreme prejudice" and violated Turner's right to a trial by jury "[f]or the relationship was one which could not but foster the jurors' confidence in those who were their official guardians during the entire period of the trial." *Id.* at 473-74. As a result, the judgment was reversed. *Id.* at 474. Therefore, in *Turner*, it was established that jurors had prejudicial contact with witnesses. In Petitioner's case, the evidence accepted by the state court established that the jurors did not have any contact with the prosecutor, the victim, or the victim's mother.

Accordingly, Petitioner does not establish that he was denied the right to a fair trial for the reasons alleged. He does not show that the state court's finding was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts. Ground One warrants no relief.

**Ground Three**: "The State court violated petitioner's Sixth Amendment right of United States Constitution in respect to a fair trial, where defense counsel's motion for mistrial based on potential extrinsic contact between certain members of jury, prosecutor, and witness was not recorded by court reporter and precluded from appellate review which enabled fundamentally unfair trial to be sustained."

Petitioner asserts that the trial court violated his Sixth Amendment right to a fair trial when Anderson's motion for mistrial was not recorded by the court reporter to be preserved for appellate review. This claim is unexhausted. Petitioner did not clearly assert in his postconviction motion that his rights were violated due to the lack of a transcript. Rather, the fact that the motion for mistrial and related discussions were not transcribed was addressed in explaining the issue raised in Ground One and the need for an evidentiary hearing.[2] Petitioner cannot return to state court to file an untimely, successive postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h). Accordingly, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Petitioner does not establish that an exception applies to overcome the default. *See id.*

Notwithstanding the default, this claim is meritless. First, Petitioner does not explain how the lack of a transcript violated his right to a fair trial. He does not allege, for instance, that there existed any need for the transcript during the trial proceedings. Petitioner simply does not demonstrate that the absence of a transcript affected the fairness of the trial itself.

---

[2] Although Respondent states that the claim in Ground Three was raised in ground two of the postconviction motion, this characterization of the claim is unconvincing. Petitioner now presents a Sixth Amendment claim concerning the lack of transcript distinct from ground two of his postconviction motion, in which he alleged a violation of his right to a trial by an impartial jury.

To the extent Petitioner argues that his appellate rights were violated, this is not a federal constitutional issue. "[I]t is well settled that there is no constitutional right to an appeal." *Abney v. United States*, 431 U.S. 651, 656 (1977). *See also Lafler v. Cooper*, __U.S.__, 132 S.Ct. 1376, 1387 (2012) ("[T]he Constitution does not require States to provide a system of appellate review."); *Griffin v. Illinois*, 351 U.S. 12, 18 (1956) ("[A] state is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all."). Nor does Petitioner establish any federal constitutional right to an appellate transcript. Petitioner relies on *Hardy v. United States*, 375 U.S. 277 (1964). However, *Hardy* does not involve a federal constitutional issue. It concerned the policy of the United States Attorney for the District of Columbia to provide appellate transcripts to indigents if the cost to the Government was not more than $200. The Supreme Court rejected this system because it "draws a distinction not present in the statute nor in the Rules of the Court of Appeals . . ." *Id.* at 279. The Supreme Court stated that its decision was based on statutory, not constitutional, grounds. "We deal here only with the statutory scheme and do not reach a consideration of constitutional requirements." *Id.* at 282. Thus, *Hardy* does not establish a constitutional standard with respect to the provision of appellate transcripts.

To the extent Petitioner's claim can be construed as alleging a due process violation, he demonstrates no entitlement to relief because he fails to show that he was prejudiced by an omission in the transcript. In a federal habeas proceeding, a state prisoner must show such prejudice to obtain relief. "[T]he absence of a perfect transcript does not violate due process absent a showing of specific prejudice. . . . Accordingly, we agree with the district court that since White has failed to demonstrate how the defective suppression hearing transcript prejudiced his direct appeal, he is entitled to no relief on this claim." *White v. State of Fla., Dep't of Corr.*, 939 F.2d 912, 914 (11th Cir. 1991).

Petitioner does not show that he was prejudiced because he fails to show that he was prevented from raising a meritorious claim on appeal. He asserts that because there was no transcript of his motion for mistrial, appellate counsel was unable to raise a claim challenging the jury's impartiality. But when Petitioner later alerted the appellate court to the lack of transcript during the postconviction proceedings, that court reversed the denial of postconviction relief. Upon remand, Petitioner was afforded an opportunity to develop this claim at an evidentiary hearing. As a result of that proceeding, the postconviction court found that no contact occurred between the jurors and the prosecutor, victim, or victim's mother.[3] The postconviction court's decision was reviewed by the appellate court and affirmed. In accordance with *White*, because Petitioner has not shown prejudice as a result of the missing transcript, he is not entitled to federal habeas relief. Ground Three warrants no relief.[4]

**Grounds Two and Four**

In his reply, Petitioner abandoned Grounds Two and Four when he conceded that Ground Two is without merit, and that Ground Four is procedurally barred. (Dkt. 18, pp. 7, 12.) Accordingly, Grounds Two and Four are not considered.

It is therefore **ORDERED** that Petitioner's amended petition for writ of habeas corpus (Dkt. 8) is **DENIED**. The Clerk is directed to enter judgment against Petitioner and to close this case.[5]

---

[3] Although Petitioner complains that the state court did not take testimony from co-counsel, the courtroom deputy, the prosecutor, or the two jurors, he makes no allegation that he attempted but was not permitted or was otherwise unable to call any of these witnesses on his behalf at the evidentiary hearing.

[4] To the extent Petitioner claims that the trial court violated Florida Rule of Judicial Administration 2.535, providing that no part of the proceedings shall be omitted when trial proceedings are reported, this argument presents a matter of state procedure that is not cognizable in a federal habeas proceeding. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (federal habeas petitions based on questions of state law do not provide a basis for relief).

[5] An evidentiary hearing is not necessary. *See Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable

It is further **ORDERED** that Petitioner is not entitled to a certificate of appealability. A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(l). A district court must first issue a COA. *Id.* Petitioner is only entitled to a COA if he demonstrates that reasonable jurists would find debatable whether the Court's procedural ruling was correct and whether the § 2254 petition stated "a valid claim of the denial of a constitutional right." *Id.*; *Slack* v. *McDaniel,* 529 U.S. 473, 484 (2000). To make a substantial showing of the denial of a constitutional right, Petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard* v. *Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack,* 529 U.S. at 484), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El* v. *Cockrell,* 537 U.S. 322, 335-36 (2003) *(quoting Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

Petitioner cannot make the requisite showing because he cannot demonstrate that reasonable jurists would debate whether the procedural determination was correct, or whether the petition stated a valid claim of the denial of a constitutional right. And because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

**ORDERED** in Tampa, Florida, on February 10th, 2016.

**JAMES D. WHITTEMORE**
**United States District Judge**

SA:mh
Copy to:
*Pro se* Petitioner
Counsel of Record

determination of fact on the part of the state court, based solely on the state court record."). Petitioner has not met this burden. Furthermore, he is not entitled to an evidentiary hearing on the merits of his procedurally defaulted claim. *See Henry v. Warden, Ga. Diagnostic Prison,* 750 F.3d 1226, 1232 (11th Cir. 2014) ("Henry is not entitled to an evidentiary hearing on the merits of his claim of juror misconduct because he procedurally defaulted that claim.").